This Opinion is a
Precedent of the TTAB

Mailed: August 5, 2020

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

*Société des Produits Nestlé S.A.*
*v.*
*Cándido Viñuales Taboada*
_____

Opposition No. 91232597
_____

Andrea Anderson and Amy J. Tindell of Holland & Hart LLP
for Société des Produits Nestlé S.A.

Roberto Ledesma of Law Office of Roberto Ledesma
for Cándido Viñuales Taboada.

_____

Before Coggins, Hudis and Lebow,
Administrative Trademark Judges.

Opinion by Hudis, Administrative Trademark Judge:

Cándido Viñuales Taboada ("Applicant"), pursuant to an application filed on April 18, 2016 under Trademark Act Section 66(a), 15 U.S.C. § 1141f(a),[1] seeks registration on the Principal Register of the mark NESPORT (in standard characters) for:

_____

[1] Application Serial No. 79191559 (the "'559 Application") was filed as a Request for Extension of Protection ("RFEOP") of International Registration No. 1308600 (the "'600 Int'l Registration"), pursuant to the Protocol Relating to the Madrid Agreement Concerning the International Registration of Marks (as amended on November 12, 2007) (the "Madrid Protocol"), implemented in the United States under Trademark Act Sections 60-74, 15 U.S.C. §§ 1141-1141n. According to the details of the '559 Application, the '600 Int'l Registration was issued on April 18, 2016. This is the same date on which Applicant filed his international

Preparations containing amino acids, vitamins, trace elements and minerals for human consumption, namely, nutritional and dietary supplements and vitamins; vitamin preparations; mineral food supplements; dietetic beverages, foodstuffs and substances for medical purposes, namely, dietary supplemental drinks in the nature of vitamin and mineral beverages, crackers and supplements; nutritional and dietetic supplements for medical purposes; preparations for pharmaceutical purposes for enhancing physical endurance, reflexes, attention span and physical capabilities; pharmaceutical products, preparations for medical and veterinary purposes for the treatment of fatigue; sanitary products for medical use, namely, sterilizing preparations; food for babies; food supplements for humans or animals; plasters and material for dressings for medical purposes; teeth filling and dental impression materials; disinfectants; preparations for destroying vermin; fungicides, herbicides; dietetic nutritional supplements made with flours, cereals, rice, tapioca and sago for human consumption; nutritional supplements made with flours, cereals, rice, tapioca and sago for human consumption, namely, supplements containing vitamins, minerals, trace elements and/or essential fatty acids; dietary nutritional supplements not for medical purposes made from plant extracts, in International Class 5.

Royal jelly for human consumption and for dietary purposes; energy bars made from cereals; energy bars made from cereals containing nutritional supplements; food preparations and meal substitutes, namely, energy bars not for medical use made with coffee, tea, cocoa, sugar, flours, cereals, rice, tapioca, sago, for stimulating muscle development; food supplements made from cereals; substances, supplements and extracts made from cereals for dieting, namely, processed cereals; savory ready-to-eat foods consisting in extruded corn; savory food preparations made of potato flour, namely, rolls; coffee, tea, cocoa and artificial coffee; rice; tapioca and sago; flour and preparations made from cereals, namely, cereal snack bars; bread, pastry and confectionery products, namely, cakes; edible ices; sugar, honey, golden syrup; yeast, baking powder; salt; mustard; vinegar, sauces; spices; ice, in International Class 30.

Energy drinks; isotonic beverages and sports drinks; aloe vera drinks and juices, beverages made from cola, fruit and vegetable juices, concentrated fruit juices and fruit nectars; syrups, fruit extracts and essences for preparing non-alcoholic beverages excluding essential oils; preparations in liquid, powder or concentrate form for making non-

application resulting in the issuance of the '600 Int'l Registration containing Applicant's RFEOP of the NESPORT mark to the United States. *See* Madrid Protocol Article 3(4); Regulations under the Madrid Protocol (as in force on February 1, 2020), Rule 15.

alcoholic beverages; soda waters, whey beverages; whey-based preparations for making beverages, soy-based beverages not being milk substitutes; preparations for making soy-based beverages not being milk substitutes; beers; mineral waters and other non-alcoholic cocktails; fruit-based beverages and fruit juices; syrups and other preparations for making colas, in International Class 32.

## I. Procedural History

Société des Produits Nestlé S.A. ("Opposer") opposed registration of Applicant's

NESPORT mark on the following grounds: [2]

- Priority and likelihood of confusion pursuant to Trademark Act Section 2(d), 15 U.S.C. § 1052(d) [**Count I**];[3]

- Dilution pursuant to Trademark Act 43(c), 15 U.S.C. § 1125(c) [**Count II**];[4] and

- Applicant's lack of bona fide intent to use the NESPORT mark in commerce pursuant to Trademark Act Section 1(b), 15 U.S.C. § 1051(b) [**Count III**].[5]

Applicant denied the salient allegations of the Notice of Opposition in its Answer,[6]

and asserted "affirmative defenses." However, they are not true affirmative defenses,

but rather mere amplifications of Applicant's denials of Opposer's claims.

After the close of discovery,[7] Opposer moved for partial summary judgment on

Count III of the Notice of Opposition, namely, Applicant's lack of a bona fide intent

---

[2] Notice of Opposition, 1 TTABVUE. References to the pleadings, the evidence of record and the parties' briefs refer to the Board's TTABVUE docket system. Coming before the designation TTABVUE is the docket entry number; and coming after this designation are the page or paragraph references, if applicable.

[3] Notice of Opposition, 1 TTABVUE 8-12, ¶¶ 1-13.

[4] *Id.* at 8-12, ¶¶ 1-11, 14-16.

[5] *Id.* at 8-13, ¶¶ 1-11, 17-18. Opposer mistakenly references Applicant's purported violation of Trademark Act Section 1(b). Opposer should have cited Trademark Act Section 66(a), which also contains a requirement that an applicant under the Madrid Protocol submit a verified declaration of his bona fide intention to use the mark in commerce. See discussion at Section II, infra.

[6] Answer, 4 TTABVUE.

[7] *See* Institution Notice and Trial Order, 2 TTABVUE.

to use the NESPORT mark in commerce for the goods recited in his application.[8] The Board denied Opposer's motion, citing genuine disputes of material fact that could not be resolved on summary judgment,[9] and encouraged the parties to consider resolving the Opposition using the Board's accelerated case resolution procedure ("ACR").[10] The parties subsequently entered into an ACR stipulation,[11] the relevant portions of which are set out below:

> 1. [Opposer] … stipulates that it will withdraw its likelihood of confusion claim under 15 U.S.C. § 1052(d) and its dilution claim under 15 U.S.C. § 1125(c) asserted in its Notice of Opposition (1 TTABVUE) with prejudice.
>
> 2. Applicant stipulates that [Opposer] … has standing in this opposition proceeding pursuant to TBMP § 309.03(b).[12]
>
> 3. The Parties stipulate that the materials submitted with briefs on the motion for summary judgment (5, 7, 8 TTABVUE) be considered at trial as trial evidence, which may be supplemented by additional evidence during the parties' trial periods (TBMP § 705 and 37 C.F.R. § 2.127(e)(2)).
>
> 4. The Parties reserve the right to object to evidence on substantive grounds such as competency, materiality, and relevancy.

---

[8] Motion for Summary Judgment, 5 TTABVUE.

[9] Board Order, 9 TTABVUE 7.

[10] *Id.* at 7-8.

[11] Stipulation, 24 TTABVUE.

[12] "TBMP" refers to the TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE. (June 2019). The TBMP was updated in June 2020, after the close of trial and briefing in this Opposition – without a change of substance in any the sections to which the parties refer. Further, "while the parties may not stipulate to a plaintiff's standing in the absence of supporting facts, thereby creating standing where none otherwise exists, the parties may stipulate as to the facts which would support standing, eliminating the need for separate proof of those facts." *Wirecard AG v. Striatum Ventures B.V.*, 2020 USPQ2d 10086, at *3 n.6 (TTAB 2020). We note below Opposer's proof of its standing, independent of the parties' stipulation.

The Board approved the parties' stipulation, and reset trial dates.[13] Following trial, the parties filed briefs on the case.

## II.  Whether Opposer's Lack of Bona Fide Intent Claim was Properly Pleaded

Trademark Act Section 66(a) is the statutory filing basis for the NESPORT application. Section 66(a) requires that, at the time of filing of the international application with the International Bureau ("IB") of the World Intellectual Property Organization ("WIPO"), an applicant requesting for extension of protection to the United States include a declaration of bona fide intention to use the mark in commerce. 15 U.S.C. §1141f(a). The declaration must specify that the applicant (or "holder"[14]) has a bona fide intention to use the mark in commerce on or in connection with the goods specified in the international application. Trademark Act Sections 45 and 60(5), 15 U.S.C. §§ 1127, 1141(5); *see also* Trademark Rules 2.33(e)(1), 2.34(a)(5), 37 C.F.R. §§ 2.33(e)(1), 2.34(a)(5).

The declaration also must include a statement that: the signatory is properly authorized to execute the declaration; the signatory believes the applicant/holder to be entitled to use the mark in commerce on or in connection with the goods specified in the international application; and to the best of his knowledge and belief, no other person, firm, corporation, association, or other legal entity has the right to use the

---

[13] Board Order, 25 TTABVUE. The Board commends the parties for availing themselves of the efficiencies realized by utilization of ACR. *See* TBMP §§ 528.02(a)(2) and 705, and authorities cited therein.

[14] "A 'holder' of an international registration is the natural or juristic person in whose name the international registration is recorded on the International Register." Trademark Act Section 60(7), 15 U.S.C. § 1141(7). See also Trademark Rule 2.33(e)(1), 37 C.F.R. § 2.33(e)(1).

mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods of such other person, firm, corporation, association, or other legal entity, to cause confusion, or to cause mistake, or to deceive. Trademark Act Sections 45 and 60(5); *see also* Trademark Rules 2.33(e)(2)-(4), 2.34(a)(5).

As noted by the TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP) (October 2018):

> The [United States Patent and Trademark Office ("USPTO")] … has provided the [International Bureau of the World Intellectual Property Organization ("IB")] … a [form] declaration of bona fide intention to use the mark in commerce for a trademark …, which is part of the official IB form for international applications and subsequent designations in which the United States is designated for an extension of protection (IB Form MM18). … The IB will ensure that the MM18 form is annexed to the international application or subsequent designation in which there is a request for extension of protection to the United States, that the wording of the declaration has not been altered, and that the document has been signed before forwarding the request for extension of protection to the USPTO. **The IB does not send the verified statement to the USPTO. … The verified statement remains part of the international registration on file with the IB**. Trademark Rule 2.33(e).

TMEP § 1904.01(c) (emphasis added). *See also Wirecard AG v. Striatum Ventures B.V.*, 2020 USPQ2d 10086, at *3 n.7 (TTAB 2020):

> Under Section 66(a) of the Trademark Act, 15 U.S.C. § 1141f(a), the holder of an international registration may file a request for extension of protection of that registration to the United States. An applicant who files such a request must declare its intention to use the mark in the United States, Section 66 of the Trademark Act, 15 U.S.C. § 1141f(a), and the resulting U.S. application is subject to examination and opposition, Section 68 of the Trademark Act, 15 U.S.C. § 1141h. *Saddlesprings, Inc. v. Mad Croc Brands, Inc.*, 104 USPQ2d 1948, 1950 (TTAB 2012).

As noted, Count III of the Notice of Opposition alleges Applicant's lack of bona fide intent to use the NESPORT mark in commerce in derogation of Trademark Act Section 1(b), rather than Trademark Act Section 66(a).[15] Both statutory provisions require a verified statement of bona fide intent at the time each such type of application is filed with USPTO. Citation of the incorrect statutory section in Opposer's Notice of Opposition, however, is not fatal to Opposer's claim.

Fed. R. Civ. P. 8(a)(2) requires that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific to this case, however, "[b]ecause the IB is notified of the grounds of the opposition by the contents of the ESTTA electronic opposition form and not the actual pleading attached thereto, it is the ESTTA electronic opposition form, and not the text of the pleading, that controls the scope of [the] … claims in opposition proceedings involving Section 66(a) applications." *Prosper Bus. Dev. Corp. v. Int'l Bus. Mach. Corp.*, 113 USPQ2d 1148, 1151 (TTAB 2014); *see also* Trademark Rule 2.107(b), 37 C.F.R. § 2.107(b) ("The grounds for opposition, the goods or services opposed, and the named

---

[15] Opposer's cites to Trademark Act Section 1(b) not only in its Notice of Opposition but also in the ESTTA cover sheet accompanying Opposer's complaint. At the time Opposer filed this Opposition, the Board's online ESTTA software did not contain a "checkbox" to explicitly select lack of bona fide intent under Trademark Act Section 66(a) as an available ground. The closest claim listed in the ESTTA form is "[n]o bona fide intent to use mark in commerce for identified goods or services" under Trademark Act Section 1(b). At the time of this decision, in order to plead a no bona fide intent claim specifically under Section 66(a), an opposer would have needed to select the "[o]ther (please concisely indicate grounds and statutory or common-law basis for opposition)" checkbox. However, selecting the "lack of bona fide intent to use" claim under Section 1(b) was sufficient to notify the IB of "a statement of all grounds" pursuant to which "protection cannot be granted" for the mark "resulting from the [extension of protection of the] international registration" to the United States. Madrid Protocol, Arts. 5(1) and 5(2)(a).

opposers are limited to those identified in the ESTTA cover sheet regardless of what is contained in any attached statement.").

"Federal pleading rules … do not countenance dismissal of a complaint for [an] imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014). Instead, what is required "at the pleading stage [are] … allegations plausibly suggesting … [liability] reflect[ing] the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era …." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also*, Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice").

Indeed, since pleading legal theories is not required, citation of the wrong statute in a complaint is not generally considered a fatal misstep. *See, e.g.*, *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010) ("[P]laintiffs in federal courts are not required to plead legal theories. Even citing the wrong statute needn't be a fatal mistake . . . .") (citations omitted); *Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988) ("The failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters.").

While our case law and commentary are consistent with the Supreme Court's modern notions of pleadings practice, *Lewis Silkin LLP v. Firebrand LLC*, 129 USPQ2d 1015, 1016 (TTAB 2018) (Board follows federal notice pleading standard which includes the requirement that the complaint "state a claim to relief that is

plausible on its face"); and 5 A. MILLER, M. KANE & A. SPENCER, FEDERAL PRACTICE AND PROCEDURE § 1219 (3d ed. 2019) ("The federal rules effectively abolish the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief."), there are special considerations for oppositions to applications filed under the Madrid Protocol. *See Distileria Serralles, Inc. v. Kabushiki Kaisha Donq*, 125 USPQ2d 1463, 1465 (TTAB 2017) ("Madrid applications are treated differently in many key respects from other applications."); Trademark Rule 2.104(c), 37 C.F.R. 2.104(c) ("Oppositions to applications filed under Section 66(a) of the Act are limited to the goods, services and grounds set forth in the ESTTA cover sheet."); TBMP § 309.03(a)(1).

This is not a situation where we are deeming the pleadings to be amended to conform to the parties' proofs,[16] which is prohibited by Trademark Rule 2.107(b) ("[O]nce filed, the opposition [against an application filed under Trademark Act Section 66(a)] may not be amended to add grounds for opposition or goods or services beyond those identified in the notice of opposition."). Rather, we find that Count III of the Notice of Opposition was sufficiently pleaded ab initio. Moreover, this proceeding may be distinguished from *O.C. Seacrets, Inc. v. Hotelplan Italia S.p.A.*, 95 USPQ2d 1327 (TTAB 2010), in which the Board denied the opposer's motion to amend its Notice of Opposition from asserting fraud based on the applicant's alleged lack of a bona fide intent to use its mark to asserting that the applicant lacked a bona fide intent to use its mark without the claim of fraud. There, the Board held that "the

---

[16] *See* Fed. R. Civ. P. 15(b).

proposed amend[ment] impermissibly raises a new ground for opposition to a Madrid application." *Id.* at 1330. Here, Opposer's lack of bona fide intent claim was sufficiently pleaded from the beginning. Although Opposer cited the wrong provision of the Trademark Act, it was in this case sufficient to provide notice of the ground for opposition. There is no leapfrog from one legal claim to another.[17]

## III.    The Record

The record consists of the pleadings and, by operation of Trademark Rule 2.122(b), 15 C.F.R. § 2.122(b), the file of Applicant's involved application. In addition, pursuant to the parties' ACR Stipulation: (1) the parties' summary judgment evidence is of record; and further (2) the parties introduced additional evidence, as follows:

### A.    Opposer's Evidence

- Declaration of Andrea Anderson, an attorney with Opposer's law firm, in Support of Opposer's Motion for Summary Judgment ("Anderson Decl.") (5 TTABVUE 21-24), attaching as exhibits:
  - Trademark Status and Document Retrieval ("TSDR") records of Opposer's U.S. Trademark Registrations: NESTEA (Reg. No. 1362253), NESTEA (Reg. No. 875735), NESTEA and Design (Reg. No. 2891793), NESTEA and Design (Reg. No. 2713931), NESTLE NESQUIK and Design (Reg. No. 2626227), NESQUIK (Reg. No. 2576460), NESCAFÉ Stylized (Reg. No. 2951916), NESTLE (Reg. No. 3343565), NESTLÉ Stylized (Reg. No. 188089), NESTLE (Reg. No. 1534496), NESTLE (Reg. No. 3038486), NESPRESSO (Reg. No. 2009751), NESPRESSO (Reg. No. 3813444) (5 TTABVUE 25-62).
  - Opposer's First Set of Interrogatories (5 TTABVUE 63-69).
  - Applicant's Response to Opposer's First Set of Interrogatories (5 TTABVUE 70-78).

---

[17] Obviously, Section 1(b) could not apply to an application under the Madrid Protocol, but the wording and import of the claim (i.e., "lack of a bona fide intention to use the mark in commerce") are otherwise identical, and similarly apply to applications filed under Section 44 as well.

- o Applicant's Supplemental Response to Opposer's First Set of Interrogatories (5 TTABVUE 79-83).
- o Opposer's First Requests for the Production of Documents and Things to Applicant (5 TTABVUE 84-95).
- o Applicant's Response to Opposer's First Requests for the Production of Documents and Things to Applicant (5 TTABVUE 96-106).
- o Opposer's First Set of Requests for Admission (5 TTABVUE 107-112).
- o Applicant's Response to Opposer's First Set of Requests for Admission (5 TTABVUE 113-115).
- o Applicant's Declaration and Exhibits from Australian trademark opposition proceeding between the parties (5 TTABVUE 116-223).
- o An e-mail exchange between the parties' counsel regarding Applicant's discovery responses (5 TTABVUE 225-227).
- o Screen capture of the <http://nesport.com> website on a specific date in 2017 (5 TTABVUE 228-229).

- Reply Declaration of Adam Hubbard, an attorney with Opposer's law firm, in Support of Opposer's Motion for Summary Judgment (8 TTABVUE 13).

- Opposer's Notice of Reliance ("Opp NOR," 26 TTABVUE 1-6), upon:
  - o WayBack Machine screen captures of Applicant's <http://nesport.com> website on specific dates in 2016, 2017 and 2018 (26 TTABVUE 7-13).
  - o Screen capture of Applicant's <http://nesport.com> website on a specific date in 2019 (26 TTABVUE 14-18).
  - o Screen capture of Applicant's Facebook page in 2019 (26 TTABVUE 19-26).
  - o Numerous refiled (i.e., duplicate) portions of Opposer's evidence in support of its unsuccessful motion for summary judgment (26 TTABVUE 27-101).[18]

- Testimony Declaration of Mark Moore, a paralegal with Opposer's law firm ("Moore Decl.," 27 TTABVUE).

---

[18] Opposer's refiling of its summary judgment material in view of the parties' ACR stipulation was duplicative and unnecessary. *Sheetz of Del. Inc. v. Doctor's Assocs. Inc.*, 108 USPQ2d 1341, 1344 n.5 (TTAB 2013) ("While we commend the parties for agreeing to efficiencies intended to facilitate the introduction of evidence at trial, ideally, [ACR] cases do not merely facilitate introduction of more evidence, but should also limit the amount of evidence placed before the Board.").

## B. Applicant's Evidence

- Declaration of Applicant, Cándido Viñuales Taboada, in Opposition to Opposer's Motion for Summary Judgment ("Taboada SJ Decl.") (7 TTABVUE 13-19), attaching as exhibits:

  o NESPORT International Registration (7 TTABVUE 20-27).

  o WhoIs records for the <nesport.com>, <nesport.us>, <nesport.ch>, <nesport.jp>, <nesport.cn>, <nesport.mx> and <nesport.net> domain names (7 TTABVUE 28-46).

  o NESPORT EUTM Registration (7 TTABVUE 47-51).

  o Screen capture of Applicant's <http://nesport.com> website on a specific date in 2017 (7 TTABVUE 52-53).

- Testimony Declaration of Applicant, Cándido Viñuales Taboada ("Taboada Testim. Decl." 28 TTABVUE 2-9),[19] attaching as exhibits:

  o Opposition decision from the European Union (28 TTABVUE 10-19).

  o NESPORT EUTM Registration (28 TTABVUE 20-24).

  o NESPORT International Registration (28 TTABVUE 25-29).

  o WhoIs record for the <nesport.com> domain name (28 TTABVUE 30-34).

  o Purchase receipt for the <nesport.com> domain name (28 TTABVUE 35-36).

  o WhoIs records for the <nesport.us>, <nesport.ch>, <nesport.jp>, <nesport.cn>, <nesport.mx> and <nesport.net> domain names (28 TTABVUE 37-51).

  o Letter with transcript showing that Applicant attended the ESADE Business Law School in the Executive Master in Marketing and Sales program during the academic period 2014-2015 (28 TTABVUE 52-55).

  o NESPORT foreign trademark registrations (28 TTABVUE 56-85).

  o WayBack Machine screen captures of Applicant's <http://nesport.com> website on specific dates in 2016, 2017 and 2018 (28 TTABVUE 86-90).

  o NESPORT 6-year business plan for the U.S. (dated 2018) (28 TTABVUE 91-112).

  o NESPORT budget estimates, and twenty-five emails to U.S. manufacturers and distributors, all in 2018 (28 TTABVUE 113-149).

---

[19] Applicant's Testimony Declaration duplicates much of, but also expands upon, his Declaration in opposition to Opposer's summary judgment motion.

- o Screen capture of Applicant's <http://nesport.com> website on a specific date in 2019 (28 TTABVUE 150-154).
- o Screen captures of Applicant's <http://nesport.com> website in WordPress, showing the last update having occurred in January 2018 (28 TTABVUE 155-159).
- o Applicant's LinkedIn communication to Opposer's Chairman and CEO in 2019 (28 TTABVUE 160-161).

## IV. Evidentiary Issues

Before turning to the merits of the Opposition, we address several evidentiary objections raised by Opposer in an Appendix to its Trial Brief.[20] Applicant responded to Opposer's objections in an Appendix to Applicant's Trial Brief.[21] Relevant to Opposer's objections, the parties' discovery period in this Opposition opened on April 12, 2017, and closed on October 9, 2017.[22] Opposer's trial period was August 1-30, 2019; Applicant's trial period was September 29 – October 29, 2019; and Opposer's rebuttal period was November 28 – December 13, 2019.[23]

Opposer objects to Applicant's testimony and accompanying exhibits introduced at trial in 2019, which Opposer requested during discovery in 2017 but Applicant did not produce.[24] Opposer further objects that these materials were not adequately

---

[20] Opposer's Trial Brief, 29 TTABVUE 31-37.

[21] Applicant's Trial Brief, 30 TTABVUE 24-28.

[22] Institution Notice and Trial Order, 2 TTABVUE 3.

[23] Board Order, 25 TTABVUE 1. The two-year gap between the close of discovery and the opening of the parties' trial periods was due to the time taken for briefing and pendency of Opposer's motion for partial summary judgment, and numerous extensions of trial dates consented to by the parties. *See* 9-23 TTABVUE.

[24] 29 TTABVUE 31. The objected-to materials (and related declaration testimony) include Applicant's 2018 business plan, cost estimates in furtherance of Applicant's business, mass e-mails to U.S. manufacturers and distributors, updates to Applicant's <http://www.nesport.com> website, and Applicant's 2019 LinkedIn message to Opposer's Chairman and CEO.

disclosed in Applicant's Pretrial Disclosures. Applicant responds that the materials were not in existence until 2018, well after discovery closed.[25] Applicant further asserts that Opposer was adequately put on notice of Applicant's trial proofs by way of an e-mail exchange in October 2018, Pretrial Disclosures served on September 13, 2019, and Amended Pretrial Disclosures served on October 28, 2019.[26]

On the one hand, "[i]f … documents and things sought to be produced are not in [the party's] custody or under their control, a statement to that effect is sufficient to excuse it from compliance with an order for their production." *Pioneer K. K. v. Hitachi High Tech. Am., Inc.*, 74 USPQ2d 1672, 1680 (TTAB 2005) (quoting *RCA Mfg. Co. v. Decca Records, Inc.*, 1 F.R.D. 433, 436 (W.D.N.Y. 1940)). On the other hand, "if [the party] know[s] where and under whose control they presently are then [the party] shall so state in detail." *Id.* However, "[t]his is not an invitation to hold back material items and disclose them at the last minute." *Galaxy Metal Gear Inc. v. Direct Access Tech. Inc.*, 91 USPQ2d 1859, 1861 (TTAB 2009).

In any event, the Board has previously declined to apply the sanction of estoppel for failure to supplement discovery when the sought-after documents were not available until after the close of discovery. *Alcatraz Media, Inc. v. Chesapeake Marine Tours, Inc.*, 107 USPQ2d 1750, 1758 (TTAB 2013), *aff'd mem.*, 565 F. App'x 900 (Fed. Cir. 2014). Here, Applicant avers the materials objected to by Opposer were not in existence until well after discovery closed. While the better practice would have been

[25] Applicant's Trial Brief, 30 TTABVUE 25.

[26] *Id.*, at 25, 29-37.

for Applicant to supplement its discovery responses when the sought-after documents came into Applicant's possession, Opposer's objection seeking exclusion of these items as not having been timely produced during discovery is overruled because the problem could have been cured by timely action on the part of Opposer.

Indeed, Opposer's objection that the materials it seeks to exclude were not adequately disclosed in Applicant's pretrial disclosures could have been cured if timely called to the Board's attention. This would have been a procedural objection made by way of a prompt motion to strike after Applicant's testimony declaration and exhibits were filed. Trademark Rules 2.121(e) and 2.123(e)(3), 37 C.F.R. §§ 2.121(e) and 2.123(e)(3).

Instead, Opposer waited until filing its Trial Brief before asserting its objection. Consequently, Opposer's objection on this basis has been waived. *See* TBMP § 707.03(b)(3); *see also Moke Am. LLC v. Moke USA, LLC,* 2020 USPQ2d 10400, at \*5 (TTAB 2020) ("An objection to foundation raised for the first time in a trial brief is untimely because the party offering the testimony (whether by deposition, affidavit or declaration) does not have the opportunity to cure the alleged defect."). *Cf. Productos Lacteos Tocumbo S.A. de C.V. v. Paleteria La Michoacana Inc.*, 98 USPQ2d 1921, 1927 (TTAB 2011) (objection on the basis that the witness had not been previously disclosed waived where not renewed in main brief and raised for first time in rebuttal brief), *aff'd,* 188 F. Supp. 3d 222 (D.D.C. 2016), *aff'd,* 743 F. App'x 457, 128 USPQ2d 1172 (D.C. Cir. 2018); *Of Counsel Inc. v. Strictly of Counsel Chartered,* 21 USPQ2d 1555, 1556 n.2 (TTAB 1991) (the opposer's testimony deposition was

taken two days prior to the opening of the opposer's testimony period, and the applicant first raised an untimeliness objection in its brief on the case; objection held waived, since the premature taking of the deposition could have been corrected on seasonable objection).

Opposer's remaining objections,[27] to which Applicant responded,[28] concern Applicant's evidence related to his activities: (1) outside the United States; and (2) not prior to or contemporaneous with the filing of Applicant's NESPORT Application in the United States. While couched as relevance objections, Opposer's protestations actually go to the weight we should afford this evidence. Lack of bona fide intent requires an objective determination based on the totality of the circumstances, *see, e.g., M.Z. Berger & Co. v. Swatch AG*, 787 F.3d 1368, 114 USPQ2d 1892, 1898 (Fed. Cir. 2015), which can include circumstances occurring after an application's filing date. *Lane*, 33 USPQ2d at 1356; *Swiss Grill Ltd. v. Wolf Steel Ltd.*, 115 USPQ2d 2001, 2008 (TTAB 2015).

Moreover, as the trier of fact, we are entitled, in fact obligated, to weigh the evidence. *See Real Foods Pty Ltd. v. Frito-Lay N. Am., Inc.*, 906 F.3d 965, 128 USPQ2d 1370, 1378 (Fed. Cir. 2018) ("The TTAB is entitled to weigh the evidence …") (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 856, 214 USPQ 1, 7 (1982) ("Determining the weight and credibility of the evidence is the special province of the trier of fact.")). "We … remind the parties that our proceedings are tried before judges

---

[27] Opposer's Trial Brief, 29 TTABVUE 35-37.

[28] Applicant's Trial Brief, 30 TTABVUE 25-28.

not likely to be easily confused or prejudiced. Objections to trial testimony on bases more relevant to jury trials are particularly unnecessary in this forum." *Grote Indus., Inc. v. Truck-Lite Co., LLC*, 126 USPQ2d 1197, 1200 (TTAB 2018). *See also RxD Media, LLC v. IP Application Dev. LLC*, 125 USPQ2d 1801, 1804 (TTAB 2018) ("the Board is capable of weighing the relevance and strength or weakness of the objected to testimony and evidence, including any inherent limitations"), *aff'd*, 377 F. Supp. 3d 588 (E.D. Va. 2019). Therefore, Opposer's objections to evidence of Applicant's activities overseas and those not prior to or contemporaneous with the filing of his U.S. trademark application are overruled.

## V.     Standing

Standing is a threshold issue that must be proven by the plaintiff in every inter partes case. *Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014); *John W. Carson Found. v. Toilets.com, Inc.*, 94 USPQ2d 1942, 1945 (TTAB 2010) (citing *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1025 (Fed. Cir. 1999)). It is one of the "requirements for establishing a statutory cause of action" before the Board. *See, e.g.*, *Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 2020 USPQ2d 10837, at *3 (Fed. Cir. July 27, 2020). There is a liberal threshold for determining standing, namely that a plaintiff must demonstrate that it possesses a "real interest" in a proceeding beyond that of a mere intermeddler, and "a reasonable belief of damage." *Id.*; *accord Empresa Cubana Del Tabaco v. Gen. Cigar*, 111 USPQ2d at 1062; *Ritchie v. Simpson*, 50 USPQ2d at 1025; *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982). A "real interest" is a "direct and personal stake" in the outcome of the

proceeding. *Ritchie v. Simpson*, 50 USPQ2d at 1026. A plaintiff can show its belief in likely damage by establishing a direct commercial interest. *Australian Therapeutic*, 2020 USPQ2d 10837, at *7; *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1844 (Fed. Cir. 2000).

Here, Opposer made of record during summary judgment briefing TSDR database records of its pleaded "NES …" registrations.[29] This was sufficient to confer standing. *Primrose Ret. Communities, LLC v. Edward Rose Senior Living, LLC*, 122 USPQ2d 1030, 1032 (TTAB 2016) (standing established based on pleaded registration made of record). Additionally, the parties stipulated that Opposer has standing in this proceeding.[30] *Kemi Organics, LLC v. Gupta*, 126 USPQ2d 1601, 1604 (TTAB 2018) (stipulation establishes standing).

## VI.    Applicable Law Regarding Bona Fide Intent

As noted above, Trademark Act Sections 60(5) and 66(a) require applicants to verify that they have a bona fide intent to use the mark in U.S. commerce as of the application filing date. 15 U.S.C. §§ 1141(5), 1141f(a). Therefore, lack of bona fide intent is a proper statutory ground on which to challenge a request for extension under Section 1141f.[31] As Opposer correctly observes, "[c]ase law regarding bona fide

---

[29] Anderson Decl., Exh. A, 5 TTABVUE 25-62.

[30] Stipulation, 24 TTABVUE 2.

[31] Trademark Act Section 66(a), 15 U.S.C. § 1141f(a), states: Requirement for request for extension of protection – A request for extension of protection of an international registration to the United States that the International Bureau transmits to the United States Patent and Trademark Office shall be deemed to be properly filed in the United States if such request, when received by the International Bureau, has attached to it a declaration of bona fide intention to use the mark in commerce that is verified by the applicant for, or holder of, the international registration.

intent to use has generally been developed in the context of trademark applications under [Trademark Act] Section 1(b). That case law is, however, also applicable to determinations of bona fide intent in other sections of the Trademark Act."[32] *See Honda Motor Co. v. Winkelmann*, 90 USPQ2d 1660, 1662 (TTAB 2009) ("In determining whether an applicant under § 44(e) has the requisite bona fide intent to use the mark in U.S. commerce, the Board uses the same objective, good-faith analysis that it uses in determining whether an applicant under § 1(b) has the required bona fide intent to use the mark in U.S. commerce.").

"Opposer has the burden of demonstrating by a preponderance of the evidence that applicant lacked a bona fide intent to use the mark on the identified goods. The absence of any documentary evidence on the part of an applicant regarding such intent constitutes objective proof … that the applicant lacks a bona fide intention to use its mark in commerce." *Research in Motion Ltd. v. NBOR Corp.*, 92 USPQ2d 1926, 1930 (TTAB 2009) (citing *Commodore Elecs. Ltd. v. CBM K. K.*, 26 USPQ2d 1503, 1507 (TTAB 1993)). The absence of documentary evidence, however, must be considered in context of the evidentiary record as a whole. *M.Z. Berger*, 114 USPQ2d

---

Trademark Act Sections 68(a)(1)-(2), 15 U.S.C. § 1141h(a)(1)-(2), state: Examination of and opposition to request for extension of protection … – (a) Examination and Opposition – (1) A request for extension of protection described in section 1141f(a) of this title shall be examined as an application for registration on the Principal Register under this Act, and if on such examination it appears that the applicant is entitled to extension of protection under this title, the Director shall cause the mark to be published in the Official Gazette of the United States Patent and Trademark Office.

(2) Subject to the provisions of subsection (c) of this section, a request for extension of protection under this title shall be subject to opposition under section 1063 of this title.

[32] Opposer's Brief, 29 TTABVUE 20 n.2.

at 1898 (the determination of objective intent is made on a case-by-case basis considering totality of circumstances).

If Opposer meets its burden, Applicant may "elect to try to rebut the opposer['s] prima facie case by offering additional evidence concerning the factual circumstances bearing upon his intent to use his mark in commerce." *Commodore Elecs.*, 26 USPQ2d at 1507 n.11. However, Applicant's "mere statement of subjective intention, without more, would be insufficient to establish applicant's bona fide intention to use the mark in commerce." *Lane Ltd. v. Jackson Int'l Trading Co.*, 33 USPQ2d 1351, 1355 (TTAB 1994).

## VII. The Parties' Evidence

### A. Opposer's Submissions

In response to Opposer's interrogatory, Applicant explained his reasons for selecting the NESPORT mark as follows:

Applicant developed and adopted the NESPORT mark based on the fusion of two concepts as follows:

(1)     NE: Near & Need – "Near" being close to the consumer and attending to the needs of people who, as a lifestyle, practice sport on a non-professional level. "Need" being the need for everyday people to practice sport as a compliment to their daily life and to bring about a healthy lifestyle.

(2)     SPORT – Applicant designed the mark NESPORT as a shorthand fusion of these concepts and brand values i.e. Near & Need + Sport = NE+SPORT. Applicant developed this brand idea through recognizing the increasing popularity and importance within mainstream consumers to have and practice a healthy lifestyle. **His intention is to use the mark on the identified goods for people who regularly engage in sport and exercise at an amateur level as opposed to professional athletes**. In other words, **the goods are intended to improve the performance of people who play sport and regularly exercise but whom do not require high functioning food items**

**and supplements** such as those needed by professional athletes. (Emphasis added).[33]

Regarding his development of the NESPORT brand, Applicant confirmed in discovery responses:

- The NESPORT mark has not been used in commerce, there have been no sales of the associated goods, and that he has held off on developing the business in the U.S. market pending the disposition of this Opposition;[34]

- Support for his bona fide intent to use the mark in commerce, or to protect the mark, consists of his U.S. trademark application, filing numerous NESPORT trademark applications and registering domain names around the world, his <nesport.com> website and documents from trademark proceedings litigated with Opposer in Australia;[35]

- He has no advertising or promotional expenditures, or supporting materials showing same except his <nesport.com> website, in connection with the mark;[36]

- There are no assignees, licensees or authorized users of the NESPORT mark;[37]

- He has no agreements or communications with potential manufacturers, distributors or suppliers for his NESPORT branded products, nor copies of communications with them, nor commitments from U.S. retailers to carry his products;[38]

---

[33] 5 TTABVUE 72-73, Int. Ans. 2. In addition to the parties' stipulation, Applicant's interrogatory answers and admissions' responses are admissible in evidence pursuant to Trademark Rule 2.120(k)(3)(i), 37 C.F.R. § 2.120(k)(3)(i). Applicant's responses to Opposer's Requests for Production that no responsive documents exist are admissible in evidence pursuant to *L.C. Licensing, Inc. v. Berman*, 86 USPQ2d 1883, 1886 n.5 (TTAB 2008).

[34] *Id.*, at 73-75, 80-81, 89, 91, 99, 102; App. Int. Anss. 3-5, 7; App. Suppl. Int. Anss. 3-5, 7; Opp. Req. for Production 4, 18-19; App. Resps. to Req. for Production 4, 18-19.

[35] *Id.*, at 74-76, 83, 89, 90-91, 98-99, 101-102; App. Int. Anss. 5, 10; App. Int. Suppl. Ans. 15; Opp. Req. for Production 2, 6, 7, 15, 17; App. Resps. to Req. for Production 2, 6, 7, 15, 17.

[36] *Id.*, at 75, 81, 90-92, 101-104; App. Int. Ans. 8; App. Int. Suppl. Ans. 8; Opp. Req. for Production 13, 20-22, 24; App. Resps. to Req. for Production 13, 20-22, 24.

[37] *Id.*, at 75, 81-82, 93, 105; App. Int. Ans. 9; App. Int. Suppl. Ans. 9; Opp. Req. for Production 31; App. Resp. to Req. for Production 31.

[38] *Id.*, at 90-91, 100, 109-110, 114-115; Opp. Req. for Production 8, 9, 10; App. Resp. to Req. for Production 8, 9, 10; Opp. Req. for Admissions 5-8, 12; App. Resps. to Req. for Admissions 5-8, 12.

- He has no materials demonstrating attempts to obtain regulatory approval for his products;[39]

- He has no documentation showing his attendance at trade shows, expositions or competitions;[40]

- He has no materials showing designs for anticipated packaging or labeling;[41] and

- He is the only person with knowledge of plans or intentions for the use of the NESPORT mark.[42]

Opposer also made of record Applicant's <nesport.com> website on individual dates of each year from 2016-2019:





October 11, 2016            June 26, 2017

---

[39] *Id.*, at 90, 100, 110, 115; Opp. Req. for Production 11; App. Resp. to Req. for Production 11; Opp. Req. for Admissions 10-11; App. Resps. to Req. for Admissions 10-11.

[40] *Id.*, at 92, 103; Opp. Req. for Production 23; App. Resp. to Req. for Production 23.

[41] *Id.*, at 90, 101, 110, 115; Opp. Req. for Production 12, 14; App. Resp. to Req. for Production 12, 14; Opp. Req. for Admissions 9-10; App. Resps. to Req. for Admissions 9-10.

[42] *Id.*, at 77-78; App. Int. Ans. 16.





August 31, 2018





August 16, 2019[43]

---

[43] <nesport.com> website screen captures, Opp NOR, 26 TTABVUE 7-18, Exhs. 1-5.

Opposer additionally introduced into evidence what purports to be a capture of Applicant's Nesport Facebook page on August 19, 2019:[44]



Opposer further submitted during its testimony period a Declaration of one of its paralegals, attesting to his access of archival 2016-2018 captures of Applicant's <nesport.com> website through the Wayback Machine of The Internet Archive <archive.org>,[45] and Applicant's active <nesport.com> website in 2019,[46] as shown above. When the paralegal accessed the <nesport.com> website in 2019, it contained

---

[44] Nesport Facebook page, Opp NOR, 26 TTABVUE 19-26, Exh. 6.

[45] Moore Decl., 27 TTABVUE 2-3, ¶¶ 2-6. Both parties submitted essentially the same WayBack Machine screen captures of Applicant's <nesport.com> website from 2016-2018. Neither party objected to this evidence.

[46] *Id.*, at 3, ¶ 7.

no functional links, except for "BECOME NESPORT PARTNER," which led to a webpage that purported to allow users to send a message to Nesport.[47]

According to his Declaration, Opposer's paralegal, in August 2019, also searched Facebook, Instagram, Twitter, and YouTube for pages named or labeled "Nesport."[48] He located the Facebook page shown above. The most recent post was on December 11, 2017 and the page only showed sales of sports clothing. The paralegal was unable to locate or access any Nesport-related pages for Instagram, Twitter or YouTube.[49]

Opposer's counsel further submitted a Declaration stating:

> I personally searched for and attempted to access the following internet domains, including most recently on January 9, 2018: nesport.com, nesport.net, nesport.us, nesport.ch, nesport.de, nesport.eu, nesport.jp, nesport.in, nesport.be, nesport.ph, nesport.fr, nesport.nl, nesport.es, nesport.cn, nesport.com.cn, and nesport.mx. All of these domains except nesport.com and nesport.us were unused and did not link to any webpage. The domain nesport.com still linked to the single-page webpage described in Opposer's Motion for Summary Judgment and attached Declaration of Andrea Anderson. The domain nesport.us simply forwarded me to nesport.com.[50]

Opposer's search for domestic and foreign NESPORT websites was performed again 18 months later. During Opposer's testimony period, Opposer's paralegal submitted a Declaration explaining the results of his search:

> On August 16, 2019, I searched for the domain names listed by Applicant in his Response to Opposer's Motion for Summary Judgment (7 TTABVUE at 2-3). These include nesport.com, nesport.net, nesport.us, nesport.ch, nesport.de, nesport.eu, nesport.jp, nesport.in, nesport.be, nesport.ph, nesport.fr, nesport.nl, nesport.es, nesport.cn,

---

[47] *Id.*, at 3, ¶ 8.

[48] *Id.*, at 4, ¶ 10.

[49] *Id.*

[50] Hubbard Decl., 8 TTABVUE 13-14, ¶ 2.

nesport.com.cn, and nesport.mx. As of August 16, 2019, all domains except nesport.es, nesport.cn, and nesport.com.cn bring up the same website in English as shown in Exhibit 4 [to Opposer's Notice of Reliance], and nesport.es, nesport.cn, and nesport.com.cn do not resolve to an active website.[51]

## A.    Applicant's Submissions

Applicant's concept for the development of the NESPORT food, beverage and supplement brand as a startup business largely mirrors his response to Opposer's Interrogatory block-quoted above.[52] To support the bona fides of his intent to use the NESPORT mark in commerce for the goods identified in his application as of April 18, 2016, Applicant expounds on his history of prior and ongoing overseas trademark battles with Opposer concerning the mark.[53] Applicant also points to his registrations of the NESPORT mark with the IB, the EU, and several overseas countries issued on or after April 18, 2016.[54] Applicant additionally discusses his registration of the generic top level domain names ("gTLDs") <nesport.com> and <nesport.net>, as well as 14 country code top level domain names incorporating NESPORT ("ccTLDs") (e.g., <nesport.us>, <nesport.cn> and others) – all of which Applicant registered from 5 to 10 months after April 18, 2016.[55]

---

[51] Moore Decl., 27 TTABVUE 4, ¶ 10.

[52] *See* Taboada SJ Decl., 7 TTABVUE 15-16, ¶¶ 5-8; Taboada Testim. Decl. 28 TTABVUE 4-6, ¶¶ 14-17.

[53] Taboada SJ Decl., 7 TTABVUE 16-18, ¶¶ 9, 11, 13, 15; Taboada Testim. Decl., 28 TTABVUE 2, 6-7, ¶¶ 3, 21, 23.

[54] Taboada SJ Decl., 7 TTABVUE 16, 20-27, 47-51; ¶¶ 9-10, Exhs. B, D; Taboada Testim. Decl., 28 TTABVUE 2, 3, 6, 7, 10-29, 56-85, ¶¶ 3, 5-7, 18, 22, Exhs. A, B, C, F.

[55] Taboada SJ Decl., 7 TTABVUE 16-18, 28-46, ¶¶ 10, 14, Exh. C; Taboada Testim. Decl., 28 TTABVUE 3-4, 6, 8, 30-51, ¶¶ 9-10, 18-19, 26, Exhs. D, E.

Apart from trademark and domain name registration activities, Applicant (with no specifics) briefly expounds upon his 20 years of work experience in the fields of sales and marketing in the food and beverage industry;[56] as well as courses of study in marketing and sales he attended at Santa Clara University in California (2015) and in Barcelona, Spain (2014-15), during which time he expanded his network of un-named high-level business contacts in the marketing, sports, and food and beverage fields.[57]

Documented evidence of Applicant's commercial activities in connection with the NESPORT mark consist of his publishing to the Internet a <http://nesport.com> landing page advertising the NESPORT brand and explaining the meaning behind the name, as shown above,[58] the development of a business plan, cost estimates in furtherance of Applicant's business, mass e-mails to U.S. manufacturers and distributors, and updates to Applicant's <http://www.nesport.com> website; all occurring in 2018.[59] Applicant completely dissociates himself from the NESPORT Facebook page Opposer made of record, denying that it is his or is maintained by anyone acting on his behalf.[60]

---

[56] Taboada SJ Decl., 7 TTABVUE 14, ¶ 3; Taboada Testim. Decl. 28 TTABVUE 4, ¶ 12.

[57] Taboada SJ Decl., 7 TTABVUE 14-15, ¶ 4; Taboada Testim. Decl. 28 TTABVUE 4, 52-55, ¶ 13, Exh. E(1).

[58] Taboada SJ Decl., 7 TTABVUE 18, ¶ 14; Taboada Testim. Decl. 28 TTABVUE 6, 8, 9, 86-90, 150-159, ¶¶ 20, 25, 26, Exhs. G, I. Applicant confirms that all NESPORT ccTLDs currently redirect to the <nesport.com> landing page.

[59] Taboada Testim. Decl. 28 TTABVUE 7-8, 91-149, ¶ 24, Exh. H.

[60] Taboada Testim. Decl. 28 TTABVUE 9, ¶ 28.

On both occasions that Applicant submitted evidence in this proceeding (in 2017 and 2019), he testified by declaration that, because of Opposer's legal actions in the U.S. and overseas, he "believed it prudent not to expend resources seeking investors and continuing to develop and promote goods under the NESPORT mark" and "[w]hen the opposition proceedings are concluded [he] plan[s] to continue to develop the NESPORT website and products and seek investors in countries where … trademark registration[s] ha[ve] been secured."[61]

## VIII. Discussion

Whether an applicant has a bona fide intent to use a mark in commerce is an objective inquiry based on the totality of the circumstances; and those circumstances must indicate the applicant's intent to use the mark that are "firm" and "demonstrable." *M.Z. Berger*, 114 USPQ2d at 1898; *see also Lane*, 33 USPQ2d at 1355 ("[T]he determination of whether applicant has a bona fide intention to use the mark in commerce is to be a fair, objective determination based on all the circumstances."). As the Board has said in the past, the mere act of filing an intent-to-use application is insufficient to establish an applicant's bona fide intention to use its mark in commerce for the identified goods:

> If the filing and prosecution of a trademark application constituted a bona fide intent to use a mark, then in effect, lack of a bona fide intent to use would never be a ground for opposition or cancellation, since an inter partes proceeding can only be brought if the defendant has filed an application.

*Research in Motion*, 92 USPQ2d at 1931.

---

[61] Taboada SJ Decl., 7 TTABVUE 18, ¶ 13; Taboada Testim. Decl. 28 TTABVUE 7 ¶ 23.

The legislative history to the Trademark Law Revision Act of 1988 ("TLRA"), which instituted applications based upon a bona fide intent to use the mark in commerce under Trademark Act Section 1(b), mentions numerous circumstances that would weigh against a finding of a bona fide intention to use a mark in commerce for the identified goods, among them:

> [T]he applicant … filed [an] … intent-to-use application[] to register the … mark for many more new products than are contemplated, [or] an excessive number of … products [than] the applicant is likely to introduce under the applied-for mark[] during the pendency of the application[] …. Other circumstances may also indicate the absence of genuine bona fide intent to actually use the mark.

S. Rep. No. 100-515, 100th Cong. 2d Sess. at 23-24 (1988) (quoted in *Lane*, 33 USPQ2d at 1355-56). This legislative history is instructive, because the bona fide intent language for a declaration supporting a trademark application, whether filed pursuant to Trademark Act Section 1(b) or 66(a), is very similar. *Compare* 15 U.S.C. § 1051(b)(3) with 15 U.S.C. §§ 1141(5) and 1141f(a).

On a related point, the Board found lack of a bona fide intent to use in *L'Oréal S.A. v. Marcon*, 102 USPQ2d 1434 (TTAB 2012) based upon the "applicant's complete lack of documentary evidence or any other objective evidence that he can/will use the mark, lack of capacity or experience needed to manufacture or otherwise offer his identified goods, vague allusions to using the mark through licensing or outsourcing, and failure to take any concrete actions or to develop any concrete plans for using the mark …." *Id*. at 1443. An intent-to-use applicant will not fare any better if the record demonstrates nothing more than the mere filing of trademark applications and the registration of domain names without a concomitant showing of efforts to actually

use the mark. *Saul Zaentz Co. v. Bumb*, 95 USPQ2d 1723, 1728 (TTAB 2010) ("[A]pplicant's testimony demonstrates that applicant's intention as of the application filing date was, at most, merely to reserve a right in the term MITHRIL by registering the domain names and filing the trademark application, without the requisite corresponding bona fide intent to actually use the mark in commerce.").

On the other hand, an applicant's capacity to market and manufacture the identified goods consistent with the natural extension of its current product line can rebut the lack of documentary evidence. *Rolex Watch U.S.A. Inc. v. AFP Imaging Corp.*, 101 USPQ2d 1188, 1197-98 (TTAB 2011), *judgment vacated as moot*, 107 USPQ2d 1626 (TTAB 2013); *see also Wet Seal Inc. v. FD Mgt. Inc.*, 82 USPQ2d 1629, 1643 (TTAB 2007) (applicant's capacity to market and/or manufacture goods, having produced them in the past under different marks, rebuts a claim that applicant lacked a bona fide intent to use).

Thus far, we have discussed the type of evidence necessary to objectively support the bona fides of an applicant's intent to use its mark in commerce. The Board also considers **when** this evidence came into existence. The particular facts of each case must be carefully considered in their totality, but generally, the strongest documentary proof will have been created prior to, or at the latest on, the filing date of the intent-to-use application. *See Swiss Grill*, 115 USPQ2d at 2009-10 (lack of bona fide intent to use found where no documentary evidence predated application filing date). Documents created seven months after the application filing date have been found relevant to, but not dispositive of, the applicant's intent at the time of filing.

*Swatch AG v. M.Z. Berger & Co.*, 108 USPQ2d at 1474 (nonetheless, the Board ultimately found the applicant's bona fide intent lacking). Correspondence occurring nine to eleven months after the filing date also has been found sufficiently contemporaneous to corroborate other evidence regarding the applicant's bona fide intent as of the application filing date. *Lane*, 33 USPQ2d at 1356.

In contrast, a long gap between the filing of an application and the activities asserted to demonstrate bona fide intent tends to undercut an inference that the applicant actually had a bona fide intent to use the mark. For example, the Board in *Boston Red Sox Baseball Club LP v. Sherman*, 88 USPQ2d 1581 (TTAB 2008), discounted evidence of Internet searches and investigations conducted more than two years after the application filing date because they "were not even remotely contemporaneous with the filing of the application." *Id.* at 1587-88; *see also Swiss Grill*, 115 USPQ2d at 2009 (applicant's vague claims about communications, meetings, or events which took place one or two years after the filing date, and which did not relate to the mark in question, were found insufficient to show bona fide intent at the time of filing).

In this opposition, we find Opposer met its initial burden of proof and persuasion (i.e., made a prima facie showing) by a preponderance of the evidence that as of the filing date of his application Applicant did not have a bona fide intent to use the NESPORT mark in commerce for the goods identified in the application. We start with the large and varied number of recited goods as diverse as pharmaceuticals, sterilizing and disinfectant preparations, teeth filling and dental impression

materials, vermin control products, herbicides, and an array of food and beverages. Notwithstanding his attempt to narrow the breadth and scope of his identification of goods through the artifice of argument,[62] Applicant submitted no proof that he had or has the capability, expertise or infrastructure, either directly or through licensees, to produce and distribute such a wide range of products.[63] We find Applicant's commentary about his work and educational experience to be at best vague and undefined with respect to creating such a broad consumables business with the NESPORT mark.

Next, mindful that Applicant's Trademark Act Section 66(a) application was filed in early 2016, we turn to his discovery responses served in 2017 indicating: no product sales, no advertising or promotional expenditures, no advertising or promotional materials, no assignees, licensees or authorized users of the NESPORT mark, no agreements or communications with potential manufacturers, distributors or suppliers for his NESPORT branded products, no commitments from U.S. retailers to carry his products, no materials demonstrating attempts to obtain regulatory approval for his products (e.g., his pharmaceutical and alcoholic beverage products), no documentation showing his attendance at trade shows, expositions or competitions, and no materials showing designs for anticipated packaging or labeling.

Opposer also submitted evidence of its investigation, which shows: (i) the absence of Applicant's Internet social media presence in connection with the NESPORT mark,

---

[62] Applicant's Brief, 30 TTABVUE 16-17.

[63] Opposer's Brief, 29 TTABVUE 21-22.

and (ii) that all of Applicant's NESTPORT ccTLD domain name registrations either did not resolve to operational websites or simply redirected Internet users to Applicant's <nesport.com> website, which itself (as we discuss below) was not used to sell or promote for sale any specific products as identified in the NESPORT Application.

As for the <nesport.com> website itself, in 2016 and 2017 the only content appearing on that site was a "COMING SOON" holder page. Not until August 2018, after discovery closed and Opposer's partial summary judgment motion had been denied, did Applicant publish content on the <nesport.com> website. Even then, this content was no more than "a landing page advertising the NESPORT brand and explaining the meaning behind the NESPORT name."[64] On this single landing page appears the broad heading "Products for Healthy Lifestyle." Under this heading are the following general product categories: "Beverages & Drinks," "Cereals," "Energy bars," "Compatible capsules," "Vitamin complexes," and "Protein complexes". There is no further discussion of these general product categories, no links to further explanatory web pages going into greater detail, and no discussion of the other myriad products listed in the NESPORT application.

Also, Applicant did not appear to make any real effort until 2018 to commercialize the NESPORT mark and products in commerce with a business plan, cost estimates to further his business, and mass e-mails to U.S. manufacturers and distributors. This was over two years following the filing of his Trademark Act Section 66(a)

---

[64] Taboada SJ Decl., 7 TTABVUE 18, ¶ 14.

application, and after Opposer filed the motion for summary judgment on the ground of lack of bona fide intent.[65]

Further, regardless of its timing, we find Applicant's business plan lacking in sufficient detail to demonstrate a bona fide intent to introduce into the market the products identified in the opposed NESPORT application. Applicant's business plan is full of hopeful assertions with only vague plans for implementation. It also lacks any real details that would be included in a credible business plan, such as strategies to build a company operational structure, identification as to sources of ingredients, packaging and labeling for Applicant's products, manufacturing and distribution capabilities, or a sales and marketing campaign – all of which Applicant does not plan to pursue until after securing his trademark registration.[66] Indeed, Applicant lists the first of the "main objectives" of the business plan as "win[ning] an important legal battle of registration on all continents."[67]

## IX.    Conclusion

When we consider the record as a whole, we have Applicant's repeated discovery responses demonstrating the absence of documentary support for his bona fide intent to use the NESPORT mark in commerce before, at the time of, and for a considerable

---

[65] To be clear, the issue is not whether Applicant undertook actions to commercialize the NESPORT mark in the United States after his application was filed, after the opposition was filed or after Opposer's summary judgment motion was filed. Rather, the question is whether Applicant's activities undertaken in 2018 evidenced Applicant's bona fide intent to use the NESPORT mark in 2016, when the NESPORT application was filed. After-the-fact activities that do not relate back to Applicant's intent at the time of filing are irrelevant.

[66] Applicant's Brief, 30 TTABVUE 14, 22.

[67] Taboada Testim. Decl., Exh. H, 28 TTABVUE 105.

time after the filing of his Trademark Act Section 66(a) application. For example, as discussed, it was not until over two years after the filing of his Application and after Opposer moved for summary judgment that Applicant even attempted to document his purported business plans in connection with the mark. *Boston Red Sox*, 88 USPQ2d 1581, 1587-88. We also find pertinent Applicant's lack of demonstrated capacity or experience needed to manufacture or otherwise offer the vast array of goods identified in the NESPORT Application. *L'Oréal*, 102 USPQ2d at 1443.

Under the circumstances of this case, and considering the totality of evidence, we find that Applicant's activities were not sufficiently contemporaneous with the filing of his application, and also not extensive or focused enough to convince us of Applicant's actual bona fide intent to use the NESPORT mark in commerce in 2016 when his application was filed. Rather, we find that Applicant's foreign and domestic trademark and domain name filings indicate only his resolve to reserve rights to the NESPORT mark for potential use in commerce at some undefined time in the future. This is insufficient under U.S. trademark law. *M.Z. Berger*, 114 USPQ2d at 1893 ("The Board concluded that [applicant] … merely intended to reserve a right in the mark and thus lacked the requisite intent. Because substantial evidence supports the Board's determination, we affirm.").

Moreover, in view of the lack of objective evidence that Applicant had a bona fide intention to use the mark NESPORT at the time of filing, Applicant's pending litigation with Opposer, before us or elsewhere, does not relieve Applicant from his burden to rebut the presumption of no bona fide intent arising from his lack of

documentation. *See, e.g.*, *L.C. Licensing*, 86 USPQ2d at 1892 ("[a]pplicant's decision to forgo a business model until after the opposition is decided does not explain his failure to have any documents whatsoever at the time the application was filed that showed an intent to use the mark.").

**Decision**: In view of the parties' ACR Stipulation, the opposition is dismissed with prejudice regarding Opposer's priority and likelihood of confusion claim and Opposer's dilution claim. The opposition is sustained regarding Opposer's claim that Applicant lacked a bona fide intent to use the NESPORT mark in commerce at the time his application was filed under Trademark Act Section 66(a). Registration of Applicant's NESPORT mark is refused.